IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RICHARD MILLIONES,          :
                                   :
        Plaintiff,        :
                                   :   CIVIL ACTION
        v.                 :   NO. 1:12-CV-3321-TWT-ECS
                                   :
FULTON COUNTY GOVERNMENT,    :
                                   :
        Defendant.        :

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter is presently before the Court on Defendant's motion to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Doc. 6]. Plaintiff has responded in opposition to the motion to dismiss, [Doc. 9], and Defendant has replied, [Doc. 12]. For the following reasons, the Court **RECOMMENDS** that Defendant's motion to dismiss, [Doc. 6], be **GRANTED in part** and **DENIED in part.**

**I.**
**Background**

Plaintiff Richard Milliones ("Plaintiff") commenced this action on September 24, 2012, alleging that his former employer, Defendant Fulton County Government ("Defendant"), violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. ("Title VII"), and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, et seq. ("ADEA"). [Doc. 1].

Plaintiff's complaint contains the following three counts: "Count I - Unlawful Retaliation Under Title VII and the ADEA"; "Count II - Gender Discrimination in Violation of Title VII"; and "Count III - Age Discrimination in Violation of the ADEA." See [Doc. 1 ¶¶ 24-47]. The facts below are derived from the allegations in the complaint:[1]

Plaintiff is a sixty-five-year-old African American male who was hired by Fulton County in 2002. [Doc. 1 ¶¶ 13, 14]. Plaintiff initially worked for the County as a Facility Manager but was later recruited by Commissioner Nancy Boxill to become her Assistant. [Id. ¶ 14]. Plaintiff served as Commissioner Boxill's Assistant for five years. [Id.]. In the later part of 2010, Joan Garner was elected as the County Commissioner to replace Nancy Boxill. [Id. ¶ 15]. Plaintiff began working as Commissioner Garner's Assistant in January 2011. [Id.]. In July 2011, Commissioner Garner named Natalie Hall ("Ms. Hall") as her Chief of Staff, and Plaintiff reported directly to Ms. Hall thereafter. [Doc. 1 ¶ 17].

After Ms. Hall was hired, Commissioner Garner began excluding Plaintiff from staff meetings. [Id. ¶ 18]. She also allowed females younger than Plaintiff to be absent from work for extended periods of time without submitting leave. [Id. ¶ 19]. As a result,

---

[1] At the motion to dismiss stage, the court accepts all factual allegations in the complaint as true and gives the plaintiff the benefit of all reasonable factual inferences. Hazewood v. Foundation Financial Group, LLC, 551 F.3d 1223, 1224 (11th Cir. 2008).

Plaintiff was required to perform additional work to manage the office.  In addition, Plaintiff had to submit leave when absent, unlike his younger, female counterparts. [Id. ¶ 19].

On September 15, 2011, Plaintiff submitted a formal complaint to Commissioner Garner. [Doc. 1 ¶ 20].  Plaintiff noted in the complaint that he believed he was being treated differently because of his age and gender.  He also noted that Commissioner Garner's isolation of him had created an uncomfortable environment. [Id.]. On September 20, 2011, Commissioner Garner banned Plaintiff from his office and stripped him of his job duties. [Id. ¶ 21].  She also told Plaintiff to work from home and to look for another position with the County. [Id.].  On September 22, 2011, Plaintiff filed a Charge of Discrimination and Retaliation with the Equal Employment Opportunity Commission ("EEOC"). [Doc. 1 ¶ 22].  Approximately two weeks later, on October 7, 2011, the County terminated Plaintiff's employment without cause. [Id. ¶ 23].

**II.**
**Discussion**

**A.  Standard of Review**

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim under the Federal Rules, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to

3

relief." Fed. R. Civ. P. 8(a)(2). The purpose of this requirement is "to give the defendant fair notice of what the claim is and the grounds upon which it rests." <u>Harrison v. Benchmark Electronics Huntsville, Inc.</u>, 593 F.3d 1206, 1214 (11th Cir. 2010) (quoting <u>Davis v. Coca-Cola Bottling Co. Consol.</u>, 516 F.3d 955, 974 (11th Cir. 2008)).

A motion to dismiss under Rule 12(b)(6) should be granted if the plaintiff does not plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007). When considering such a motion, a court must accept the allegations in the plaintiff's complaint as true and construe them in the light most favorable to the plaintiff. <u>M.T.V. v. DeKalb Cnty. Sch. Dist.</u>, 446 F.3d 1153, 1156 (11th Cir. 2006) (citation omitted); <u>Fuller v. Johannessen</u>, 76 F.3d 347, 349-50 (11th Cir. 1996). Although the complaint need not provide detailed factual allegations, the basis for relief in the complaint must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555. Further, the "[f]actual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Id.</u>  Since <u>Twombly</u>, the Supreme Court has clarified that Rule 8 of the Federal Rules of

Civil Procedure requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus, a complaint must contain "factual content that [would] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

"Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law." Moore v. McCalla Raymer, LLC, ___ F. Supp.2d ___ (N.D. Ga. 2013) (citing Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) ("[T]he court may dismiss a complaint ... when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action.")); see also Glover v. Liggett Group, Inc., 459 F.3d 1304, 1308 (11th Cir. 2006); Aque v. Home Depot U.S.A., Inc., 629 F. Supp.2d 1336, 1350 (N.D. Ga. 2009).

The court will apply the above standards in ruling on Defendant's motion to dismiss the complaint.

**B.   Defendant's Motion to Dismiss**

### 1. The "Personal Staff" Exemption

Defendant argues that Plaintiff's complaint should be dismissed because he is not an "employee" for purposes of Title VII or the ADEA. Specifically, Defendant contends that the allegations in the complaint establish that Plaintiff was the personal staff member of an elected official, thus placing him "within the personal staff

exemption of both [Title VII and the ADEA]." <u>See</u> [Doc. 6-1 at 1-2, 4-10, 13-14]. Plaintiff responds that whether the "personal staff" exemption applies here is an issue that should be decided at the summary judgment stage or trial. [Doc. 9 at 2, 5-8]. Plaintiff further argues that, even if the Court were to consider the "personal staff" exemption issue at the motion to dismiss stage, the alleged facts show that he is an "employee" for purposes of Title VII and the ADEA. [<u>Id.</u> at 3, 9-11]. Defendant replies that "many courts in this Circuit, and others, have determined the applicability of the personal staff exemption when presented on a Motion to Dismiss" and that "there are numerous facts alleged ... that provide ample evidence for the Court to determine whether the personal staff exemption ... applies to Plaintiff." [Doc. 12 at 3-4].

Title VII prohibits employers from discriminating against individual employees because of the employee's race, color, religion, sex, or national origin. <u>See</u> 42 U.S.C. § 2000e-2(a). The term "employee" is defined under Title VII as

> an individual employed by an employer, except that the term 'employee' shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office.

42 U.S.C. § 2000e(f).

The ADEA, which prohibits discrimination on the basis of age, defines "employee" in identical terms to Title VII. <u>See</u> 29 U.S.C. § 630(f). Like Title VII, the ADEA excludes from its coverage individuals who are "personal staff" members of publically elected officials. "Because the prohibitions of the ADEA were derived *in haec verba* from Title VII," the determination of whether an individual falls within the personal staff exemption is the same under either Act. <u>See</u> <u>E.E.O.C. v. Reno</u>, 758 F.2d 581, 583-84 (11th Cir. 1985) (stating that case law on Title VII personal staff exemption is "highly relevant" in the ADEA context); <u>Montgomery v. Brookshire</u>, 34 F.3d 291, 295 (5th Cir. 1994) (noting that "courts construe the two exemptions consistently").

The term "personal staff" is not defined in Title VII or the ADEA. Courts have construed the personal staff exemption narrowly, however, because "Congress intended ... the ... exception to apply only to those individuals who are in highly intimate and sensitive positions of responsibility on the staff of the elected official." <u>Teneyuca v. Bexar County</u>, 767 F.2d 148, 150 (5th Cir. 1985); <u>see also</u> <u>Reno</u>, 758 F.2d at 584; <u>Wall v. Coleman</u>, 393 F. Supp. 826, 829-31 (S.D. Ga. 1975). The term "personal staff" "embodies the general and traditional proposition that positions of confidentiality, policy-making, or acting and speaking on behalf of the chief are

7

truly different from other kinds of employment." <u>Shahar v. Bowers</u>, 114 F.3d 1097, 1104 n.15 (11th Cir. 1997).

The determination of whether an individual is part of an elected official's personal staff involves a "highly factual" inquiry that focuses on "the nature and circumstances of the employment relationship between the complaining individual and the elected official ...." <u>Teneyuca</u>, 767 F.2d at 152; <u>see also</u> <u>Birch v. Cuyahoga County Probate Court</u>, 392 F.3d 151, 158 (6th Cir. 2004); <u>Frazier v. Smith</u>, 12 F. Supp.2d 1362, 1367 (S.D. Ga. 1998)(Alaimo, J.).  Courts have considered the following non-exhaustive list of factors when making such determinations:

> (1) Whether the elected official has plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only that elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filling the position.

<u>Laurie v. Alabama Court of Criminal Appeals</u>, 88 F. Supp. 2d 1334, 1338 (M.D. Ala. 2000) <u>aff'd</u>, 256 F.3d 1266 (11th Cir. 2001) (citations omitted).

The Eleventh Circuit has never considered whether members of a county commissioner's staff are the "personal staff" of an elected official under these discrimination statutes.  Thus, there is no <i>per</i>

*se* rule exempting such individuals from Title VII and ADEA coverage. In fact, contrary to Defendant's assertions, courts rarely decide the personal staff exemption issue even at the *summary judgment* stage, "[s]ince this determination demands extensive factual analysis ...." <u>Frazier v. Smith</u>, 12 F. Supp.2d at 1367 (citing <u>Calderon v. Martin County</u>, 639 F.2d 271, 272-73 (5th Cir. 1981));[2] <u>see also</u> <u>Teneyuca</u>, 767 F.2d at 152 (noting that the determination of the "personal staff" exception "does not lend itself well to disposition by summary judgment").

Defendant cites cases for the proposition that "many courts" have determined the applicability of the personal staff exemption on a motion to dismiss, but none are persuasive here.  In <u>Laurie v. Alabama Court of Criminal Appeals</u>, 88 F. Supp. 2d 1334, 1338 (M.D. Ala. 2000) <u>aff'd</u>, 256 F.3d 1266 (11th Cir. 2001), for example, "the defendants moved for summary judgment on various grounds, including that the district court lacked subject matter jurisdiction over the action ...." <u>Id.</u> at 1267.  Thus, <u>Laurie</u> was not even before the court on a motion to dismiss, much less one under Rule 12(b)(6). Moreover, the dismissal in <u>E.E.O.C. v. Reno</u>, 758 F.2d 581 (11th Cir. 1985) "was based on lack of subject matter jurisdiction pursuant to

---

[2] In <u>Bonner v. City of Pritchard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent, all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

9

Rule 12(b)(1).  This 12(b)(1) dismissal is a 'facial' dismissal. That is, the district judge did not resolve questions of fact, but ruled as a matter of law, that plaintiff was not an 'employee' covered by ADEA." <u>Garcia v. Copenhaver, Bell & Associates, M.D.'s, P.A.</u>, 104 F.3d 1256, 1265-66 (11th Cir. 1997) (discussing the procedural posture of <u>Reno</u>).  Like <u>Reno</u>, the district court's decision to dismiss in <u>Wall v. Coleman</u>, 393 F. Supp. 826 (S.D. Ga. 1975), the final case Defendant cites, appears to be based on a lack of subject matter jurisdiction and "facial" in the sense that no factual questions were resolved.[3]

Even if the Court were inclined to consider the applicability of the personal staff exemption at this stage, the allegations in Plaintiff's complaint do not provide a sufficient basis from which to conduct a proper analysis of "the nature and circumstances of the employment relationship between the complaining individual and the

_____

[3] The issue presented in both <u>Reno</u> and <u>Wall</u> was whether assistant state attorneys are the "personal staff" of elected state attorneys.  Because the nature of the employment relationship in question could be determined from state statutes describing the state attorney's powers, duties, and job, the <u>Reno</u> and <u>Wall</u> courts concluded that assistant state attorneys are the personal staff of the elected state attorneys.  <u>See</u> <u>Reno</u>, 758 F.2d at 584-85; <u>Wall</u>, 393 F. Supp. at 830-31; <u>see also</u> <u>Frazier v. Smith</u>, 12 F. Supp.2d at 1366-67 (noting that courts typically rely on an analysis of the particular facts of each case to determine the personal staff exemption, despite consistent findings from the Eleventh Circuit that assistant state attorneys are personal staff for Title VII and ADEA purposes).

AO 72A
(Rev.8/82)

elected official ...." <u>Teneyuca</u>, 767 F.2d at 152.  This is so because the question of Plaintiff's position with Defendant is "highly factual" and "cannot be resolved based solely on the allegations in the pleadings." <u>Patrick v. City of Florala</u>, 793 F. Supp. 301, 305 (citing <u>Teneyuca</u>, 767 F.2d at 152).  Indeed, the fact that the Court may "reasonably infer from Plaintiff's complaint that Plaintiff served as a member of Commissioner Garner's staff," as Defendant contends, is irrelevant to the present inquiry. <u>See</u> [Doc. 12 at 4-5].  On a motion to dismiss pursuant to Rule 12(b)(6), the plaintiff receives the benefit of all reasonable factual inferences, not the defendant. <u>Hazewood v. Foundation Financial Group, LLC</u>, 551 F.3d 1223, 1224 (11th Cir. 2008).  When the inferences from the allegations are construed in Plaintiff's favor here, as is required, "the complaint succeeds in identifying facts that are suggestive enough to render the ["employee"] element [of Plaintiff's claims] plausible." <u>Rivell v. Private Health Care Sys.</u>, 520 F.3d 1308, 1310 (11th Cir. 2008) (internal quotations and citations omitted).

Accordingly, because the facts pleaded in Plaintiff's complaint plausibly suggest that Plaintiff is an "employee" under Title VII and the ADEA, the Court cannot conclude that Plaintiff is exempted from the coverage of either Act as a matter of law.  Therefore, **IT IS RECOMMENDED** that Defendant's motion to dismiss Plaintiff's complaint on "personal staff" exemption grounds be **DENIED**.

11

### 2. Knowledge of Protected Activity

Defendant next argues that Plaintiff's retaliation claims in Count I should be dismissed because Plaintiff has not alleged that Defendant was aware of Plaintiff's statutorily protected activity. [Doc. 6-1 at 10-11]. In response, Plaintiff cites the allegations that he complained to Commissioner Garner about discrimination and filed a charge with the EEOC to show that Defendant knew of his protected activity. [Doc. 9 at 11-13].

"[T]o successfully allege a prima facie retaliation claim under either Title VII, the ADEA or the ADA, a plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression." Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311 (11th Cir. 2002); see also Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008); Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1279 (11th Cir. 2004) (per curiam).

A plaintiff establishes that he engaged in statutorily protected expression, the first element in a retaliation claim, by showing that he either opposed an employment practice Title VII or the ADEA makes unlawful (i.e. "the opposition clause") or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" (i.e. "the participation clause"). See 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d). A

12

plaintiff establishes that "he suffered an adverse action," the second element of a retaliation claim, if the challenged action is one that a reasonable employee would find to be "materially adverse," meaning "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Sante Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (citations and internal marks omitted). Finally, to establish the third element of a retaliation claim, a plaintiff must show a "causal connection" between the protected activity and the adverse action. See Crawford, 529 F.3d at 970. A causal connection exists where the plaintiff can show "that the decision-maker was aware of the protected conduct and that the protected activity and adverse actions were not wholly unrelated." Shannon v. Besllouth Telecommunications, Inc., 292 F.3d 712, 716-717 (11th Cir. 2002).

Here, the only issue to be decided is whether the pleaded facts plausibly suggest that the decision-maker was aware of Plaintiff's protected conduct. Plaintiff alleges in his complaint that he "submitted a formal complaint" to Commissioner Garner about age and gender discrimination on September 15, 2011, and that he was fired on October 7, 2011. [Doc. 1 ¶¶ 20, 23]. The act of complaining about age and gender discrimination is an act in opposition to an employment practice made unlawful by Title VII and the ADEA. See Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn., 555

13

U.S. 271, 276 (2009) ("The term 'oppose,' being left undefined by the statute, carries its ordinary meaning, to resist or antagonize ...; to contend against; to confront; to resist; withstand."). Therefore, to the extent that Plaintiff alleges that Commissioner Garner was the decision-maker, Plaintiff has pleaded factual content showing "that the decision-maker was aware of the protected conduct ...." Shannon, 292 F.3d at 716-717.

In light of the fact that Plaintiff has pleaded sufficient factual content to render the "causation" element of his retaliation claims plausible, and because Defendant has offered no other argument in support of dismissal, the Court **RECOMMENDS** that Defendant's motion to dismiss Plaintiff's retaliation claims be **DENIED**.

### 3.   Punitive Damages

Defendant next argues that Plaintiff's claims for punitive damages should be dismissed because Defendant is a governmental entity. [Doc. 6-1 at 11-13]. Plaintiff has not responded to Defendant's argument regarding punitive damages, and the argument is therefore deemed unopposed. See LR 7.1B NDGa.

Title VII provides that "[a] complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) ...." 42 U.S.C. § 1981a(b)(1).  It is undisputed here that Fulton County is

14

a governmental entity.   Thus, Plaintiff may not recover punitive damages against Defendant, and Plaintiff's claims for punitive damages must be dismissed as a matter of law. See Alexander v. Fulton County, Ga., 207 F.3d 1303, 1322 (11th Cir. 2000), overruled on other grounds by Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003); Freeman v. City of Riverdale, 1:06-CV-2230-WSD-LTW, 2007 WL 1129004, at *2 (N.D. Ga. Apr. 16, 2007).

Accordingly, the Court **RECOMMENDS** that Defendant's motion to dismiss Plaintiff's claims for punitive damages be **GRANTED**.

## III.
## Conclusion

For the reasons discussed above, the Court **RECOMMENDS** that Defendant's motion to dismiss, [Doc. 6], be **GRANTED in part** and **DENIED in part**.

**SO REPORTED AND RECOMMENDED**, this 30th day of April, 2013.

/s/ E. Clayton Scofield III
E. CLAYTON SCOFIELD III
UNITED STATES MAGISTRATE JUDGE

15